[L.A. No. 30415. In Bank. Aug. 6, 1975.]

AUSTIN H. GREEN et al., Petitioners, v.
REX E. LAYTON, as City Clerk, etc., Respondent.

## COUNSEL

Burke, Williams & Sorensen, Colin Lennard and Brian A. Pierik for Petitioners.

Burt Pines, City Attorney, Robert Thomson and Claude E. Hilker, Assistant City Attorneys, and Jerome Montgomery, Deputy City Attorney, for Respondent.

## OPINION

**MOSK, J.**—In a number of recent decisions, the United States Supreme Court and this court have held that a statute which requires a candidate for public office to pay a filing fee as the exclusive means of securing a

place on an election ballot violates the equal protection clause of the United States Constitution and that some reasonable alternative means of access to the ballot must be provided. (*Lubin* v. *Panish* (1974) 415 U.S. 709 [39 L.Ed.2d 702, 94 S.Ct. 1315]; *Bullock* v. *Carter* (1972) 405 U.S. 134 [31 L.Ed.2d 92, 92 S.Ct. 849]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 345-349 [116 Cal.Rptr. 97, 525 P.2d 1273]; *Donovan* v. *Brown* (1974) 11 Cal.3d 571 [115 Cal.Rptr. 41, 524 P.2d 137].) We consider in this proceeding the question whether section 35 of the Los Angeles Elections Code provides such a reasonable alternative.

A candidate for elective office in Los Angeles must file a declaration of intention to become a candidate and upon doing so he is provided with a petition for nomination which he must file at a later date, signed by a specified number of voters. Section 35 of the city's election code sets forth the requirements for the filing of such a declaration. The section provides two alternative methods a candidate may follow: he may either pay a $300 filing fee, or submit a petition containing 500 signatures in addition to the signatures which appear on the nominating petition. If he chooses the first of these alternatives he must pay at least one-half of the fee when he files his declaration, and may postpone payment of the remainder to the time he subsequently files the nominating petition. A candidate who selects the second means must declare in writing at the time he files his declaration that he chooses to submit an "in lieu" petition rather than paying the fee. Our concern here is whether the requirement of section 35 that a candidate make an irrevocable choice between these two alternative methods of qualification at the time he files his declaration is a reasonable requirement.[1]

On January 6, 1975, petitioners Green and Feliz each filed at the office of respondent city clerk a declaration of intention to become a candidate for the city's board of education. At the same time, they signed a statement that they would submit an "in lieu" petition instead of paying the filing fee. The statement, on a form apparently prepared by respondent, provides that the candidate, in choosing this method to qualify for the ballot "understands" that he "may not change his mind and pay all or any portion of the filing fee at a later date." Petitioners were compelled to sign the statement as a condition of obtaining the "in lieu" petition for circulation. On January 25, petitioners submitted their

---

[1]While section 35 does not expressly state that the choice between the two methods provided therein is irrevocable, the requirement that one-half of the fee *must* be paid at the time the declaration is filed obviously compels that conclusion since a candidate who chooses the "in lieu" method at the time he files his declaration cannot later comply with the requirement that he have paid the fee at the time of filing the declaration. Respondent so conceded in oral argument.

nominating petitions to respondent for filing, but respondent refused acceptance because their "in lieu" petitions contained an insufficient number of signatures. There is some conflict as to whether petitioners tendered payment of the full $300 filing fee at that time, but respondent admits that such an offer would have been refused as untimely even if it had been made.[2]

Thereupon, petitioners sought a writ of mandate from this court to compel respondent to accept their nominating petitions for filing and to place their names on the election ballot. They alleged that the requirement of section 35 that a candidate make an irrevocable choice at the time of filing his declaration between the alternatives of paying a filing fee or submitting additional signatures on an "in lieu" petition denies them equal protection of the law because it is arbitrary and discriminatory and bears no reasonable relationship to the objective of limiting the size of the ballot.

The printing of the sample ballots was scheduled to commence a few days after the petition for the writ was filed, and petitioners also sought an order delaying the printing of the ballots until their names could be placed thereon. Although we did not accede to this request, we issued an alternative writ directing respondent to either delay the printing of the sample ballots or to show cause why he had not done so.

█ We face at the outset the question whether this proceeding is moot because the relief sought by petitioners is no longer available. The ballots have long since been printed without their names, and the election in which they sought to participate has already taken place. We have often held that an issue does not become moot merely because it is of no further immediate interest to the party who has raised it. If a matter is of general public interest and is likely to recur in the future, a resolution of the issue is appropriate. (See, e.g., *Knoll* v. *Davidson, supra,* 12 Cal.3d 335, 344; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578]; *Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 832 [48 Cal.Rptr. 481, 409 P.2d 481].) The constitutionality of section 35 of the Los Angeles Elections Code obviously meets this test.

In *Lubin* v. *Panish, supra,* 415 U.S. 709, the United States Supreme Court declared unconstitutional provisions of the California Elections

---

[2]Petitioners allege that they each tendered payment of the fee on January 25. Respondent denies these allegations in his answer to the petition for a writ of mandate filed by petitioners, but submits in support of the denial the affidavit of an employee in his office who refers only to Green's asserted failure to tender the fee. The declaration makes no reference to petitioner Feliz.

Code which required all candidates for public office to pay a filing fee in order to obtain a place on the ballot. The court recognized that the reason for the filing fee requirement is to limit the size of the ballot and to compel candidates to pay some of the administrative costs of the election process, and it characterized a state's interest in keeping the ballot within manageable, understandable limits as of the "highest order" (*id.* at p. 715 [39 L.Ed.2d at p. 708]). It held, however, that filing fees do not in and of themselves test the genuineness of a candidacy or the extent of voter support, and that the absence of any alternative means of gaining access to the ballot rendered the California statutes unconstitutional. One alternative method suggested by the high court to test the "seriousness" of a candidacy was to require an office seeker to persuade a substantial number of voters to sign a petition in his behalf.

Subsequently, in *Knoll v. Davidson, supra,* 12 Cal.3d 335, which involved the same sections of the Elections Code as the United States Supreme Court considered in *Lubin,* we stated, "It is not our province to dictate what statutory system the Legislature should enact as a replacement but we emphasize that nothing that we have said herein should be deemed to preclude it from establishing a system which includes the requirement of a filing fee, so long as such system also includes a reasonable alternative means of access to the ballot, available to all candidates indigent and nonindigent alike." (12 Cal.3d at p. 349.)

Petitioners do not challenge the reasonableness of the requirement that candidates who choose not to pay the fee obtain an additional 500 signatures, nor do they claim that it is improper to require them to indicate their preference as to the two alternatives provided by section 35 at the time a declaration of candidacy is filed. Rather, they express concern only with the narrow issue whether the section may properly require that the choice must irrevocably be made at the time the declaration of candidacy is filed.

We do not doubt that the provision in question has the effect of inducing a candidate to choose to pay the filing fee rather than to attempt to gather the additional signatures. A person with substantial means would pay the fee in order to assure a place on the ballot rather than take the risk of not being able to gather the additional 500 signatures.[3] On the other hand, a candidate of marginal means might wish to attempt to obtain the additional signatures to save the filing fee,

---

[3] Of course, all candidates must obtain the appropriate number of signatures on a nominating petition, whether or not they pay the filing fee.

perhaps to use the funds for purposes related to his election campaign, and to pay the fee only if he fails in that attempt. The requirement for an initial, irrevocable choice restricts the freedom of potential candidates to choose between the two alternatives offered by the section.

Moreover, the requirement bears little relationship to measuring the seriousness of a candidate's pursuit of office. One who chooses the "in lieu" method and gathers several hundred more signatures than a candidate who has paid the fee (although not the 500 signatures required by the section) and who, in addition, offers to pay the full fee at the time he files his nominating petition, has obviously demonstrated his sincere intentions as an office seeker to at least as great a degree as the candidate who chooses to pay a fee instead of seeking additional signatures. It does not appear reasonable under these circumstances to deny access to the ballot merely because a candidate failed to pay the fee at the time he filed his declaration.

We examine, then, the justification advanced by respondent for the restrictions contained in section 35. Respondent does not claim that the purpose of the requirement for an initial irrevocable choice is to confine the size of the ballot to manageable proportions. Rather, the sole justification offered is the administrative convenience of respondent.

He urges that it is necessary for his office to know in advance whether a candidate wishes to avail himself of the "in lieu" procedure so that respondent can assign the appropriate number of employees to examine the "in lieu" petitions when they are ultimately submitted. It may be necessary to hire temporary employees in addition to assigning regular city employees to the task of examining the validity of the signatures, and respondent asserts that if candidates were permitted to declare their intention to submit "in lieu" petitions "only to abandon them and decide to pay the filing fee on the last day [it] . . . will . . . result in an over allocation and employment of staff when fewer than the anticipated number of petitions are submitted."

We find this contention unpersuasive. The "over allocation" of employees which respondent seeks to avoid has little relation to the requirement of an irrevocable choice at the time a declaration of candidacy is filed. A candidate who pays the fee may find that he has insufficient signatures on his nominating petition to qualify for the ballot, and one who chooses the "in lieu" alternative may also be unable to secure enough signers for either or both the nominating or the "in lieu"

petition. In both these situations, more employees would be assigned to the task in advance than would be actually required. Thus, the requirement of an irrevocable choice has no clear relationship to respondent's ability to efficiently conduct the duties of his office.

Moreover, to the extent that the purpose of the filing fee is to require that a candidate pay the administrative cost of examining his nominating petition,[4] that purpose is fulfilled whether the fee is paid at the time the declaration is filed or later, when the nominating petition is submitted.

Respondent asserts that section 35 imposes no greater burden on a candidate than requiring him to comply with time limitations for the filing of a declaration of candidacy. But reasonable time limitations for the filing of declarations of candidacy affect all candidates alike; they make no differentiation on the basis of the wealth of the candidates.

█ We conclude the requirement of section 35 that an irrevocable choice between the two alternatives provided therein must be made at the time a candidate files his declaration of candidacy is unconstitutional. It not only unfairly burdens a candidate's exercise of the "in lieu" alternative, but it bears no reasonable relationship to the seriousness of his candidacy or to the cost of administering the nominating process.

The alternative writ heretofore issued, having served its purpose, is discharged, and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[4]Section 35 provides that the filing fee "reflects the approximate cost of processing a nominating petition . . . ."