Filed 4/2/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC P. EARLY et al., | C087947 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2018-80002902-CU-WM-GDS) |
| v. | |
| XAVIER BECERRA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

Early Sullivan Wright Gizer & McRae, Peter D. Scott; Steve Cooley and Associates, Steve Cooley, Brentford Ferreira; Parris Law Firm and R. Rex Parris for Plaintiffs and Appellants.

Kaufman Legal Group, Stephen J. Kaufman, Gary S. Winuk, George M. Yin; Downey Brand and Jay-Allen Eisen for Defendants and Respondents Xavier Becerra and Becerra for Attorney General 2018.

Steven J. Reyes and Lisa M. Alarcon for Defendant and Respondent Alex Padilla.

1

Appellants Eric P. Early and his election committee, Eric Early for Attorney General 2018 (collectively, Early), appeal from denial of their petition for writ of mandate to preclude respondent Xavier Becerra from running for Attorney General in 2018. Early contended that Becerra, appointed Attorney General by former Governor Brown in 2016, was not eligible for the office under Government Code section 12503.[1] Becerra was an "inactive" member of the California State Bar (State Bar) from 1991 to the end of 2016. Government Code section 12503 provides: "No person shall be eligible to the office of Attorney General unless he shall have been admitted to practice before the Supreme Court of the state for a period of at least five years immediately preceding his election or appointment to such office."

Early argues that an "inactive" attorney may not practice law in California and therefore is not "admitted to practice" under Government Code section 12503. We disagree.

Both active and inactive attorneys are members of the State Bar. (Bus. & Prof. Code, § 6003.) The phrase "admitted to practice" refers to the event of admission to the bar and the status of being admitted, and does not require engagement in the "actual" or "active" practice of law. Becerra did not cease to be "admitted to practice" in California when he voluntarily changed his status to "inactive." The order and judgment of the trial court are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Becerra was admitted to the State Bar on June 14, 1985, and changed his status to inactive on January 1, 1991. From January 1, 1993, until January 2017, Becerra served

---

[1] Respondents include Becerra and his election committee, Becerra for Attorney General 2018 (collectively, Becerra), and Alex Padilla, the California Secretary of State. The Secretary of State takes no position on the merits of Early's challenge to Becerra's eligibility for the office of Attorney General. Accordingly, our discussion focuses on the competing positions of Early and Becerra.

as a member of the United States House of Representatives.[2]  He changed his status back to active on January 1, 2017, after he was appointed Attorney General by Governor Brown.  Becerra completed the term of office of Attorney General that Kamala Harris vacated to run for the United States Senate.  Becerra then ran as a candidate for the office in the November 2018 election.

On May 29, 2018, Early filed a petition for extraordinary writ to require the Secretary of State to remove Becerra's name from the November 2018 election ballot or to prohibit the Secretary of State from placing Becerra's name on the ballot.  Early also sought a declaratory judgment that Becerra was ineligible for the office of Attorney General.  Early advised that he was not seeking to invalidate Becerra's appointment or remove him from office, but solely to take Becerra off the ballot to prevent a further violation of the eligibility requirements.[3]

Early's position was that Becerra did not meet the eligibility requirements of Government Code section 12503 because only an attorney actually practicing law in court in California had the legal competence to serve as Attorney General.  "The eligibility requirements were set in place in order to ensure that the Attorney General, the State's chief lawyer, has a minimum amount of legal experience to be able to

---

[2]  Becerra filed a motion for judicial notice of (1) his service as a member of Congress, (2) the 2018 primary and general election results for the office of Attorney General, (3) an indexed letter from the Attorney General regarding article VI, section 15 of the California Constitution, and (4) an enrolled bill report regarding Business and Professions Code section 6006.  Becerra's motion was unopposed.  We deferred ruling on the request and now grant it.

[3]  Early acknowledged that in 2007 a petition challenging the appointment of Governor Brown as Attorney General under Government Code section 12503 on the same ground as here, i.e., his "inactive" status during the eligibility period, had been denied.  Early maintained that the case was wrongly decided and distinguishable because former Governor Brown had already been elected and sworn in as Attorney General when the petition was filed.

competently carry out the critical responsibilities of that office. However, Becerra, prior to being appointed as the unelected Attorney General, had not practiced law for a single day in the preceding 26 years.[4]"

On June 25, 2018, Becerra answered the petition and filed an opposition brief. In his opposition, Becerra stated that "[t]he California Supreme Court admitted Becerra to practice on June 14, 1985, and he has been a member in good standing ever since. Thus, Becerra has been 'admitted to practice' continually for more than 30 years." Becerra argued that, "[i]gnoring the plain language of [Government Code] section 12503, Petitioners insist that candidates for Attorney General must be 'active' bar members and 'actively practicing' law for five years before they can run for office. Neither of these requirements appears in the statute."

On July 6, 2018, Early filed a reply brief, in which he rejoined that "[g]iven that the legislative purpose behind Government Code § 12503's five-year requirement is to 'establish a minimum qualification of actual experience and skill in law, demonstrated by uninterrupted membership in the State Bar,' why would Becerra's inactive membership (during which time the practice of law *is prohibited*) comport with legislative goals? Plainly, *it does not* and Mr. Becerra's 26 years of inactive membership cannot be counted toward the five-year eligibility requirement."

On July 12, 2018, the trial court issued a tentative ruling denying the petition. The court found that the plain language of Government Code section 12503 did not support Early's claims. The court commented that Early did not cite any case law interpreting the statute and did not dispute that Becerra was admitted to the State Bar in 1985, more than

---

**4** "Further, for the five and a half years between 1985 and 1991 during which Becerra was an 'active' member of the California State Bar, Becerra only actually practiced law for three of those years – the rest of his time was spent as an administrative assistant for California State Senator Art Torres and as a member of the California State Assembly starting in 1990."

five years before 2018. Instead, Early relied on case law interpreting eligibility requirements for state court judges and sections of the Business and Professions Code regarding inactive State Bar members. The court analyzed these authorities and concluded they did not support the petition. The court considered the plain language of Government Code section 12503 and determined that it does not prohibit a person from serving as Attorney General who has voluntarily chosen inactive status during the five-year period preceding his or her appointment or election to the office.

On July 13, 2018, the trial court conducted a hearing on the petition. At the hearing, Early's counsel made an oral motion to dismiss the claim for declaratory relief as duplicative of the petition.

The trial court confirmed its tentative ruling with minor modifications. The court also granted Early's oral motion to dismiss the declaratory relief claim.

On July 24, 2018, Early filed an emergency petition for writ of mandate with this court. Early requested an immediate stay in light of the upcoming election.

On July 31, 2018, the trial court issued an order denying the writ and dismissing the complaint, and entered judgment in favor of Becerra.

On August 2, 2018, this court denied the petition and request for stay, citing *Chambers v. Terry* (1940) 40 Cal.App.2d 153.

On August 7, 2018, Early filed a petition for review and request for immediate stay with the California Supreme Court. The next day the court requested informal opposition, which Becerra filed the following day, as directed by the court. On August 10, 2018, Early filed a reply. The same day the California Supreme Court denied the petition for review and application for stay.

5

# DISCUSSION

## *Standard of Review*

"The standards applicable to appellate review of a trial court's interpretation of a statute are well established.  Appellate courts review statutory interpretations de novo. [Citation.]"  (*California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 190 (*California Teachers Assn.*).)

" 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  [Citation.]  We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.]  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citations.]  If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such circumstances, we " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'  [Citation.]" ' "  (*California Teachers Assn., supra*, 95 Cal.App.4th at p. 191, quoting *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see also *Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 731.)

## *Mootness*

We are informed by Becerra's motion for judicial notice that he was elected Attorney General in 2018.  None of the parties has addressed the issue of mootness raised thereby.  We conclude that this case is not moot because, as shown by the challenges to both Becerra and former Governor Brown, it poses an issue of broad public interest that is likely to recur.  (*Johnson v. Hamilton* (1975) 15 Cal.3d 461, 465; *Green v. Layton* (1975) 14 Cal.3d 922, 925; *Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 527.)

*Government Code Section 12503*

Early contends "[t]he phrase 'admitted to practice' as used in the statute can mean only one thing—the actual ability to practice law." However, the word "actual"—or "active," for that matter, does not appear in the statute. It is axiomatic that "[w]e are prohibited from inserting words into a statute under the guise of statutory interpretation." *In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1527; *Greiner v. Keller* (2019) 36 Cal.App.5th 332, 338.)

Nonetheless, Early reasons that an attorney who voluntarily takes "inactive" status may not practice law, and therefore is not "admitted to practice" in California. We conclude that admission to practice law as a member of the State Bar and the status of being admitted to the bar are distinct from the status of being an inactive member. Under the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), only the Supreme Court may "admit" a person "as an attorney at law in all the courts of this state . . . ." (*Id.*, § 6064, subd. (a).) Likewise, only the Supreme Court has the power to disbar or suspend an attorney "after an attorney's admission to practice." (*Id.*, § 6100.) There are two classes of State Bar membership: active and inactive. (*Id.*, § 6003.) Every member of the bar is an active member until enrolled as inactive (1) involuntarily by the State Bar under specified circumstances, or (2) voluntarily at the member's request. (*Id.*, §§ 6004, 6005, 6007.) An inactive member may not practice law in California. (*Id.*, § 6125.) An inactive member who practices law in the state is guilty of a misdemeanor. (*Id.*, § 6126, subd. (a).)

In sum, under the State Bar Act, an inactive member may not practice law in California but remains admitted in the state and a member of the bar. The State Bar Act confirms our interpretation of the plain language of Government Code section 12503, to wit, "admitted to practice" refers to being admitted as an attorney in California, not the active or inactive status of an admitted attorney.

7

*Analogous Authorities on Eligibility for Judicial Office*

The parties do not cite any case law or other authority interpreting Government Code section 12503, but offer analogous authority on eligibility for judicial office as guidance on the meaning of the statute. On balance, these authorities support Becerra.

Early relies on a case involving former section 23 of article VI of the California Constitution, *Johnson v. State Bar of California* (1937) 10 Cal.2d 212 (*Johnson*), as supporting his position that Government Code section 12503 requires actual practice of law during the five-year period required to accrue eligibility. In *Johnson*, the California Supreme Court disbarred an attorney who had made a false statement in a sworn declaration of candidacy for superior court judge "to the effect that his occupation for the past three years had been that of practicing lawyer whereas in fact he was then and had been under suspension for almost five months prior thereto." (*Johnson, supra*, at p. 214.) Countering the attorney's argument that his declaration was truthful because he had been representing a client in federal court, the Supreme Court found that it was obvious the statement was "deliberately made with the intention of giving an impression which was not correct." (*Id.* at p. 216.) The court quoted the eligibility requirements of article VI, section 23, providing that " 'No person shall be eligible to the office of . . . a judge of a superior court . . . unless he shall have been admitted to practice before the Supreme Court of the state for a period of at least five years immediately preceding his election or appointment to such office.' " (*Johnson, supra*, at p. 216.) The court concluded that "[c]ertainly an attorney who has been suspended from the practice of law during this period cannot successfully claim to be eligible." (*Ibid*.) Further, the court said, "[i]t is self-evident, we think, that said provision requires as a fundamental qualification for the office of superior judge, that the candidate for such position be qualified as an attorney actually entitled to practice in the state courts, and when petitioner in his sworn declaration of candidacy for such position made under oath the statement that his occupation was that of 'lawyer' and his occupation for three years immediately preceding

8

was that of 'lawyer, practicing, and admitted to practice since 1927,' there cannot be the slightest doubt that he intended thereby to convey the idea that he was in fact a lawyer legally entitled to practice *in the state courts.*" (*Ibid.*)

The discussion in *Johnson* did not involve a determination whether voluntary inactive status, as opposed to suspension by the Supreme Court, counted against the five-year period when a candidate must be "admitted to practice" to be eligible for the position of state judge. The Supreme Court's statements in *Johnson* were intended to refute the petitioner's claim that he had truthfully declared himself to be a practicing lawyer in federal court, when the constitutional provision expressly referred to a candidate being admitted to practice in California state courts.

Closer to the mark is Early's reliance on 63 Ops.Cal.Atty.Gen. 260 (1980), which addressed the question whether two years while a member was suspended for nonpayment of State Bar fees counted towards the 10-year period of State Bar membership required to be eligible for selection as a judge in any state court but the municipal court. Under the State Bar Act, the California Supreme Court may impose disciplinary suspension of bar membership or suspend membership for nonpayment of annual fees. (63 Ops.Cal.Atty.Gen., at pp. 262-263, citing, inter alia, Bus. & Prof. Code, §§ 6100, 6143.) At that time, article VI, section 15 of the California Constitution, which replaced section 23, provided in relevant part: " 'A person is ineligible to be a judge of record unless for 5 years immediately preceding selection to a municipal court or 10 years immediately preceding selection to other courts, the person has been a member of the State Bar or served as a judge of a court of record in this State.' " (63 Ops.Cal.Atty.Gen., at p. 262.) The Attorney General found that article VI, section 15 "changed the words 'he has in this State been admitted to practice law' to 'he has been a member of the State Bar,' " but was not intended to change the substance of the eligibility requirement. (63 Ops.Cal.Atty.Gen., at p. 262.)

9

The Attorney General noted that the Supreme Court held in *Johnson* that a person who had been suspended from practice for disciplinary reasons during the requisite period was not eligible for judicial office. (63 Ops.Cal.Atty.Gen., *supra*, at p. 264.) But the question of whether suspension for nonpayment of fees affected eligibility had not yet been addressed. (*Ibid.*) The Attorney General's opinion concluded that such suspension did affect eligibility since it had the same effect as a suspension for disciplinary reasons, i.e., the attorney was not authorized to practice law. (*Id.* at pp. 264-265.) The opinion reasoned that, if the rule were otherwise, an attorney could avoid paying fees and cease practicing law for years and then pay up to be eligible for judicial office. (*Ibid.*) In the sentence of the opinion that Early highlights, the Attorney General stated that "[w]e believe the requirement of Article VI section 15 of the constitution is designed, at least in part, to establish a minimum qualification of actual experience and skill in law, demonstrated by uninterrupted membership in the State Bar." (63 Ops.Cal.Atty.Gen., at p. 265.)

The Supreme Court in *Johnson* and the Attorney General in 63 Ops.Cal.Atty.Gen. 260 did not take up the issue of an attorney who voluntarily chooses inactive status. Both involved an attorney suspended by the Supreme Court for conduct that violated the State Bar Act. But the State Bar Act permits a member to voluntarily choose inactive status. (Bus. & Prof. Code, §§ 6003, 6004.) A voluntarily inactive member remains a member of the State Bar. (*Id.*, § 6003.) Thus, we find little guidance in *Johnson* and 63 Ops.Cal.Atty.Gen. 260.

Becerra relies heavily on *Chambers v. Terry, supra*, 40 Cal.App.2d 153. In that case, the court considered a state statute providing that municipal court judges in San Diego " 'must have had at least five years active practice at law in this State prior to their election or appointment.' " (*Id.* at p. 154.) Following an election for the office of municipal court judge, the losing contestant cited this statute and contended that the winner was "ineligible and not qualified to be elected to this office for the reason that he

10

'had not had at least five years active practice at law in this State prior to his said election.' " (*Ibid.*) As quoted above, section 23 of article VI of the state Constitution then in effect required a candidate for judicial office to " 'have been admitted to practice before the supreme court of the State for a period of at least five years immediately preceding his election or appointment to such office.' " (*Chambers v. Terry*, at p. 155.) The court in *Chambers v. Terry* held that the statute regarding San Diego municipal court judges was unconstitutional in specifying an eligibility requirement in excess of article VI, section 23 of the California Constitution, fixing "the legal qualification of such judges, having to do with their training, ability and experience in the legal profession . . . ." (*Chambers v. Terry*, at p. 156)

In *Chambers v. Terry*, the only specification in the statute in excess of the constitutional provision was the requirement of "active" practice. (*Chambers v. Terry, supra*, 40 Cal.App.2d at p. 155; compare *Bagg v. Wickizer* (1935) 9 Cal.App.2d 753, 757 [statute requiring " 'not less than two years actual practice of law in this state' " prior to election or assuming duties of justice of the peace means "the real and active practice of law . . ."].) Requiring "active" status for eligibility to serve as Attorney General is likewise in excess of the "admitted to practice" language in Government Code section 12503.

The distinction between suspension and voluntarily inactive status was the focus of a 1973 opinion letter from the Attorney General to a traffic referee, which concluded that, according to the plain language of article VI, section 15 of the state Constitution, "an inactive member of the State Bar is considered a member of the State Bar. Hence, inactive membership may be included in computing the requisite time qualifications for judicial office." (Cal. Atty. Gen., Indexed Letter, No. IL 73-41 (Feb. 27, 1973) p. 1 (hereafter No. IL 73-41).)

Accepting the premise that no change was intended between section 15 and section 23 of article VI of the state Constitution, the Attorney General analyzed *Johnson*,

11

*Chambers v. Terry*, and other decisions, and determined that, while case law did not provide a definitive answer whether the Constitution required active membership for judicial appointment, "[i]t would appear to indicate that active membership *per se* was not a prerequisite.  Admission to the bar, and the ability to actively practice, *at the option of the admittee*, appears to have been the criteria."  (No. IL 73-41, *supra*, at p. 4.)

The Attorney General pronounced this conclusion a salutary result.  (No. IL 73-41, *supra*, at p. 6.)  "Requiring that persons only be members of the State Bar, and not actual practitioners of the law, insures eligibility to judicial office for that vast reservoir of potential judicial talent who otherwise would be ineligible under a stricter interpretation of the California Constitution.  This category could include law professors as well as individuals serving in quasi-judicial capacities, who, because of the inherent nature of their functions or personal preference, may become inactive members of the State Bar."  (*Ibid.*)

We find that the authorities—Indexed Letter, No. IL 73-41 and *Chambers v. Terry*—directed at the issue of active or inactive status more apposite regarding the "admitted to practice" language of Government Code section 12503, and indicate that an attorney who chooses voluntary inactive status is not thereby disqualified from accruing eligibility for the office of Attorney General.

*Amendment to Business and Professions Code Section 6006*

Early argues that a 1989 amendment to Business and Professions Code section 6006, concerning the rights and privileges of inactive licensees, supports his interpretation of Government Code section 12503.  (Stats. 1989, ch. 1425, § 1.)  The 1989 amendment added the following sentence to Business and Professions Code section 6006:  "Those who are or have been enrolled as inactive members at their request are members of the State Bar for purposes of Section 15 of Article VI of the California Constitution."  (Bus. & Prof. Code, § 6006.)  Thus amended, the statute provides that an

12

attorney who chooses inactive status continues to be a member of the bar in terms of accruing the time required for eligibility for judicial office under article VI, section 15 of the California Constitution. Early maintains that "the Legislature's decision not to extend such an 'inactive lawyer' exception to the eligibility for Attorney General, directly reflects the Legislature's intent that 'inactive' membership in the State Bar does not count toward the five-year admission to practice requirement for Government Code § 12503."

We believe that Becerra has the better argument that the 1989 amendment to Business and Professions Code section 6006 was intended to clarify the law in light of *Johnson*, not to enact new law.

Becerra cites an enrolled bill report in the record on Senate Bill No. 905 (1989-1990 Reg. Sess.) prepared by the Office of Local Government Affairs that so states. The report includes the following commentary: "Currently, an individual must be a member of the State Bar for five years immediately proceeding [*sic*] appointment as municipal court judge, and ten years prior to being appointed as a judge to other state courts. [¶] According to Mark Harris with the State Bar Association, current law is unclear whether an attorney's time on inactive status would count toward their eligibility to run for, or be appointed to, a judicial position. Mr. Harris stated that only one case has addressed the issue. In that case an attorney was placed on involuntary inactive status during a disciplinary proceeding. The court determined that the attorney's inactive status should not count toward his eligibility to be appointed a judge. [¶] This bill would not apply to an attorney's involuntary inactive status, it would apply only where an attorney has voluntarily chosen to place himself or herself on inactive status." (Office of Local Government Affairs, Enrolled Bill Rep. on Sen. Bill No. 905 (1989-1990 Reg. Sess.) Sept. 25, 1989, p. 3.) Thus, "[t]his measure would . . . clarify that qualified attorneys on voluntary inactive status would be eligible for consideration for judicial appointment." (*Id.* at p. 4.)

The California Supreme Court in *Johnson* held that the time an attorney was suspended did not count towards the time required for eligibility for judicial office. (*Johnson, supra*, 10 Cal.2d at pp. 215-216.) *Johnson* was silent on voluntary inactive status, leaving its effect in that context unclear. Hence, the impetus was for a clarification, not a change in the law. (See *Satyadi v. West Contra Costa Healthcare Dist.* (2014) 232 Cal.App.4th 1022, 1032; *Scott v. City of San Diego* (2019) 38 Cal.App.5th 228, 243.) In light of *Johnson*, the amendment to Business and Professions Code section 6006 clarified that the time an attorney voluntarily chose inactive status would not be disregarded in the eligibility calculation. Since the Legislature did not amend Business and Professions Code section 6006 to enact new law, we can draw no inference of intent from any claimed failure to enact a similar amendment to Government Code section 12503.

*Out-of-state Case Law*

Early's final argument is that "two out-of-state cases premised on similar eligibility requirements for attorney general, have held the requirement of active membership and actual practice cannot be ignored or compromised." As Becerra points out, both cases involved statutes containing an express actual or active practice requirement that Government Code section 12503 lacks.

In *Abrams v. Lamone* (2007) 398 Md. 146 [919 A.2d 1223], cited by Early, the court interpreted a provision of the Maryland Constitution: " 'No person shall be eligible to the office of Attorney-General, who is not a citizen of this State, and a qualified voter therein, and has not resided and *practiced Law in this State for at least ten years*.' " (*Abrams*, at p. 1225, plur. opn. of Bell, C.J.) The court said the italicized language made membership in the state bar a threshold requirement. (*Id.* at pp. 1241-1243, plur. opn. of Bell, C.J.) But it also required more than bar membership. "Because the Attorney General was, and is, intended to be the foremost lawyer for the State, it is not surprising

14

that a candidate for that office would be required to have more qualification than simply a bar membership, that it would be required that a person aspiring to that position would be required to be both learned in the law, as evidenced by his or her bar membership, and experienced in its practice, as reflected in his or her length of practice." (*Id.* at p. 1253, plur. opn. of Bell, C.J.)

Whatever might have impelled Maryland to place language in its constitution requiring candidates for Attorney General to have actually practiced law for a prescribed period, Government Code section 12503, in contrast, refers to membership in the State Bar ("admitted to practice") but has no language requiring the candidate to have "practiced Law" in the state to be eligible.

Early also cites *Bysiewicz v. Dinardo* (2010) 298 Conn. 748 [6 A.3d 726], where the Connecticut Supreme Court concluded that a statute requiring that the attorney general be " 'an attorney at law of at least ten years' active practice at the bar of this state' means an attorney with at least some experience litigating cases in court" (*id.* at p. 740) and "that the attorney general must have regularly engaged in the practice of law as a primary means of earning his or her livelihood for at least ten years." (*Id.* at p. 746.) *Bysiewicz v. Dinardo* presents an even clearer case where the "active practice" language of the statute imposes eligibility requirements in excess of Government Code section 12503.

We find *Cross v. VanDyke* (2014) 375 Mont. 535 [332 P.3d 215] (*Cross*), to be more apposite and instructive on the issue before us. In that case, the Montana Supreme Court held that a period of voluntary inactive membership in the Montana State Bar counted under a constitutional provision requiring a candidate for the court to be admitted to the practice of law in the state for five years. (*Id.* at p. 215.)

In *Cross*, a group of voters challenged a candidate's eligibility to run for a seat on the Montana Supreme Court in 2014. (*Cross, supra*, 332 P.3d at p. 215.) The candidate was admitted to the state bar in 2005, voluntarily chose inactive status from 2007 to 2012

15

while he practiced outside the state, and returned to active status in Montana in 2013. (*Ibid.*) Throughout the period the candidate was inactive, he retained his license, which listed his membership status as inactive. (*Ibid.*)

To be eligible for judicial office, the Montana Constitution required a candidate to be " 'admitted to the practice of law in Montana for at least five years prior to the date of appointment or election.' " (*Cross, supra*, 332 P.3d at p. 217.) As in California, no inactive member may practice law in Montana. (*Id.* at p. 218.) The Montana Supreme Court had the authority to suspend or disbar a member. (*Id.* at pp. 218-219.) But in *Cross*, the candidate had not been terminated, suspended, or subjected to any form of disciplinary action. (*Id.* at p. 219.) By voluntary action, he chose "not to engage in the practice of law in Montana, selecting inactive membership for a period of approximately six years." (*Ibid.*) He had never been " 'un-admitted.' " (*Ibid.*) But his status as an inactive member "restricted him from 'practic[ing] law' " in Montana. (*Ibid.*)

The Montana Supreme Court resolved whether this restriction rendered the candidate ineligible by noting the "key relevant distinction between the qualifications for judicial officers and the qualifications for Attorney General." (*Cross, supra*, 332 P.3d at p. 219.) While candidates for both offices must reside in the state for two years and be "admitted to the practice of law in Montana, a candidate for Attorney General must have 'engaged in the active practice thereof for at least five years before election.' " (*Ibid.*) The " 'active practice' " requirement was omitted from the constitutional provision governing eligibility for the Montana Supreme Court. (*Ibid.*) The court rejected the plaintiff's argument that "she is not advocating for an 'active practice' requirement, but for a construction that 'admitted to the practice' means an unrestricted ability to engage in the practice of law." (*Id.* at p. 220.) The court said that, although the candidate "could not *engage* in the practice of law while on inactive status, his *admission* to the practice was not affected." (*Ibid.*)

16

Unlike Montana, in California there is no "active practice" requirement for eligibility for the office of Attorney General. Candidates for both the office of Attorney General and state judge must be, respectively, "admitted to practice" (Gov. Code, § 12503) or "a member of the state bar" (Cal. Const., art. VI, § 15). The absence of an "active" or "actual" qualifier in Government Code section 12503 indicates that eligibility for Attorney General does not impose this additional requirement beyond what is required for judicial office. And like Montana, we hold that the phrase "admitted to practice" cannot be construed to require the unrestricted ability to practice law. An inactive attorney unable to engage in the practice of law remains admitted to practice in California and may accrue time towards eligibility for the office of Attorney General.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


                                              /s/
                                        RAYE, P. J.


We concur:


    /s/
BUTZ, J.


    /s/
HOCH, J.

17